## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| AMANDA LOVE and WINGO SMITH, Individually and on behalf of all others similarly situated, <br><br>     Plaintiffs, <br><br> vs. <br><br> PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a FEDLOANS SERVICING, INC., <br><br>     Defendant. | CIVIL ACTION NO. |

## NOTICE OF REMOVAL

Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA")

hereby gives notice under 28 U.S.C. § 1446 of its removal of this action from the

State Court of Fulton County in the State of Georgia to the United States District

Court for the Northern District of Georgia.  Removal is based on 28 U.S.C. §§ 1331,

1441, and 1442, and is proper for these reasons:

## I.    BACKGROUND

1.    On April 12, 2019, Plaintiffs Amanda Love and Wingo Smith

(collectively "Plaintiffs") commenced this action by filing a Complaint (the

"Complaint") in the State Court of Fulton County in the State of Georgia, Civil

Action Number 19EV002000.  The Complaint is captioned: *Amanda Love and*

*Wingo Smith, Individually and on behalf of all others similarly situated v. Pennsylvania Higher Education Assistance Agency d/b/a FedLoans Servicing, Inc.* A true and correct copy of the Complaint, along with all of the process, pleadings, and orders received by PHEAA to date, are attached as Exhibit A.

2.      Plaintiffs are federal student loan borrowers currently in repayment. PHEAA is a student loan servicer.  Relevant here, PHEAA services student loans issued by the federal government under the William D. Ford Direct Loan Program, 20 U.S.C. § 1087a *et seq.* ("Direct Loans").  PHEAA also administers the Public Service Loan Forgiveness Program ("PSLF" or the "PSLF Program").  Under the PSLF Program, the federal government may forgive the remaining balance of a borrower's Direct Loans after they satisfy particular statutory and regulatory requirements, including making qualifying payments for ten years.  *See* Compl. at ¶ 19.

3.      Borrowers seeking loan forgiveness under the PSLF Program submit Employment Certification Forms ("ECF") to verify their employment qualifies under the PSLF Program requirements.  *See id.* at ¶ 25.

4.      Plaintiff Love alleges that she took out multiple federally backed loans to fund her undergraduate and law school education, which were eventually consolidated into three Direct Loans.  *See id.* at ¶ 39.

5.      Plaintiff Love alleges that from February of 2009 to June of 2010, she worked for the Louisiana District Attorneys Association. *See id.* at ¶ 40. She submitted an ECF for that position to PHEAA in June 2012. *See id.* at ¶ 41. Purportedly, PHEEA sent Plaintiff Love a letter confirming her employment at the Louisiana District Attorneys Association qualified for the PSLF Program. *See id.* at ¶ 42. In 2018, Plaintiff Love alleges, PHEAA sent her a letter stating that "this approval was issued in error because we determined that the [Louisiana District Attorneys Association] does not provide a qualifying service as its primary purpose for the purposes of the PSLF program." *See id.* at ¶ 45.

6.      Plaintiff Love claims she has been continuously employed from July 2010 until filing this Complaint by "various other approved public service groups," including the East Baton Rouge Public Defender's Office, Disability Rights Texas, the Federal Public Defender's Office for Southern District of Texas, the DeKalb County Public Defender, and the Georgia Department of Law. *See id.* at ¶ 46.

7.      Plaintiff Love alleges PHEAA began servicing her loans in 2012 and that it failed to properly credit multiple payments she made before June 2012. *See id.* at ¶¶ 49, 53. She also claims to have made an advanced payment on November 20, 2012, for which she was not credited because it was "not within the billing period." *See id.* at ¶¶ 54-55. Plaintiff Love contends PHEAA failed to properly

account for the actual number of PSLF qualifying payments she made. *See id.* at ¶¶ 56-61.

8.    Plaintiff Smith alleges that he took out multiple federally backed loans to fund his undergraduate and law school education, which were eventually consolidated into two Direct Loans. *See id.* at ¶ 66.

9.    Plaintiff Smith claims that he worked for Georgia Legal Services Program from July 2008 to May 2015, and for Atlanta Legal Aid Society from June 2015 to filing of this Complaint. *See id.* at ¶ 67.

10.    Plaintiff Smith contends that his loans were previously serviced by the Missouri Higher Education Loan Authority ("MOHELA"), and that he made full, on-time qualifying payments to MOHELA. *See id.* at ¶¶ 68, 69.

11.    He alleges that PHEAA failed to count the qualifying payments made to MOHELA. *See id.* at ¶ 70. Further, Plaintiff Smith alleges PHEAA has only given him credit for 11 PSLF qualifying payments, though he has consistently made qualifying payments for ten years. *See id.* at ¶ 71.

12.    Plaintiff Smith contends that in February 2018, PHEAA reported to the National Student Loan Data System that he had fallen behind on his loan payments, despite his having never been delinquent. *See id.* at ¶¶ 75, 76.

13.    In May 2018, the financial aid department of the University of Illinois purportedly contacted Plaintiff Smith to inform him that the school had received notice he was behind on his federal student loans. *See id.* at ¶ 77. Plaintiff Smith was supposedly "shocked and embarrassed" by the communication. *Id.* at ¶ 78.

14.    Plaintiffs additionally purport to bring claims on behalf of four putative classes made up of Georgia residents with federal student loans serviced by PHEAA. *See id.* at ¶ 80. First, the "Georgia Libel Class" includes borrowers who "had their payment history falsely presented to a third party as being delinquent, in default, or past due." *Id.* Second, the "Georgia ECF Class" includes borrowers who "received approval of their employment certification form (ECF) for having qualifying employment pursuant to the PSLF program, but at a subsequent date had their employment decertified by PHEAA and declared unqualifying for the PSLF program." *Id.* Third, the "Georgia Audit Class" includes borrowers who "made qualifying payments under the PSLF program to a servicer other than PHEAA, and subsequently failed to receive credit from PHEAA for those qualifying payments made to other servicers." *Id.* Fourth, the "Georgia Prepayment Class" includes borrowers who "made qualifying payments under the PSLF program but did not receive proper credit for those qualifying payments because they were made early and deemed not within the billing period." *Id.*

15. Based on the above alleged conduct, Plaintiffs purport to raise eight causes of action against PHEAA: three claims for common law negligence, *see id.* at ¶¶ 91-137, three claims for breach of contract based on the servicing contract between PHEAA and the Department of Education, alleging Plaintiffs were intended third party beneficiaries of this contract, *see id.* at ¶¶ 138-163, one claim for libel under Georgia Statute § 51-5-1 *et seq.*, *see id.* at ¶¶ 164-168, and one claim for promissory estoppel under Georgia Statute § 13-3-44, *see id.* at ¶¶ 169-174.

## II.    BASES FOR REMOVAL JURISDICTION

16. As discussed below, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1442

### A.    Federal Officer Removal

17. This Court has removal jurisdiction over the instant matter under 28 U.S.C. § 1442(a)(1), which provides for removal of any "civil action [. . .] against or directed to [. . .] any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]"  Removal under § 1442(a)(1), also known as federal officer removal, is available to a federal contractor when it can demonstrate that: "First, [...] it is a person within the meaning of the statute who acted under a federal officer. § 1442(a)(1).  Second, [...] it performed the actions for

which it is being sued under color of federal office. […]  Third, [it] must raise a colorable federal defense." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (citing *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)); *see also Mesa v. Cal.*, 489 U.S. 121, 124-36 (1989).  PHEAA satisfies these requirements, which the Eleventh Circuit gives "a broad reading[.]"  *Caver*, 845 F.3d at 1145 (citing *Fla. v. Cohen*, 887 F.2d 1451, 1454 (11th Cir. 1989)).

18.     As a threshold matter, PHEAA is a federal contractor for purposes of the Complaint.  PHEAA services Plaintiffs' Direct Loans and administers the PSLF Program at the direction of the United States Department of Education (the "Department").  *See* Department Servicing Contract (the "Contract"), attached as Exhibit B; *see also* Compl. ¶¶ 34-36.

19.     PHEAA satisfies the requirement of acting under the direction of a federal officer.  The Department, rather than self-service the Direct Loans it issues, contracts with third-party servicers to perform that function.  *See* 20 U.S.C. § 1087f(a)(2).  PHEAA, as one of the Department's third-party servicers, services the Direct Loans and administers the PSLF Program.  *See* Contract, Ex. B.  Thus, to the extent that PHEAA is liable to Plaintiffs, that liability arose by virtue of actions performed at the direction of a federal officer.  *See Caver*, 845 F.3d at 1144 (holding that defendant was acting under a federal officer when it "help[ed] assist or carry out

the duties of [the Department of Agriculture] and work[ed] closely with [the Department of Agriculture] to fulfill the congressional objective").

20.    Several courts have upheld removal of actions against federal student loan servicers under 28 U.S.C. § 1442(a)(1) and denied remand motions. *See, e.g., Cobb v. Gc Servs.*, No. 3:16-3764, 2016 U.S. Dist. LEXIS 168928, at *5 (S.D. W. Va. Dec. 7, 2016) (upholding federal student loan servicer's removal of action to federal court under § 1442(a)(1) because it acted under direction of federal officer when it "helped and assisted the [Department] in its loan collection activities"); *Smith v. Collection Techs., Inc.*, No. 2:15-cv-6816, 2016 U.S. Dist. LEXIS 36845, at *6-16 (S.D. W.Va. March 22, 2016) (same).

21.    PHEAA performed the acts for which it is being sued under color of federal office.  Plaintiffs' claims all relate to PHEAA's servicing of their Direct Loans under the PSLF Program, which PHEAA undertakes at the direction of the Department of Education.  As a Department loan servicer, PHEAA communicated with borrowers on the Department's behalf.  Department guidelines heavily inform those communications.  Thus, to the extent Plaintiffs claim PHEAA is liable by virtue of communications it made, or should have made, to Plaintiffs on behalf of the Department, PHEAA's actions undoubtedly "relate to" its work for the Department.  There is a causal nexus between Plaintiffs' state law claims and

PHEAA's conduct under color of federal office.  *See Caver*, 845 F.3d at 1145 ("[T]he acts for which [defendant] is being sued occurred because of [defendant's] performance of its duties and loan agreement with [the Department of Agriculture]."); *Hepstall v. Humana Health Plan, Inc.*, No. 18-0163, 2018 U.S. Dist. LEXIS 112727, at *17 (S.D. Ala. July 3, 2018) ("Because [plaintiff's] claims are intertwined with Humana's obligations pursuant to regulations that govern its role in administering Part C Medicare claims, the Court finds that the causal nexus requirement has been met."); *see also Cobb*, 2016 U.S. Dist. LEXIS 168928, at *5-6 (finding causal nexus between student loan servicer's alleged violations of West Virginia Consumer Credit and Protection Act and Department instructions when servicer contracted with the Department to service federal loans and servicer's actions were consistent with contract).

22.    Finally, PHEAA has a colorable federal defense to Plaintiffs' claims. PHEAA—on behalf of the Department—services Plaintiffs' Direct Loans and administers the PSLF Program.  Insofar as Plaintiffs claim that PHEAA is liable because of its administration of that program, it is immune from suit on the basis of derivative sovereign immunity, *see Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 21 (1940) ("Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground

of liability has been found to be either that he exceeded his authority or that it was not validly conferred."); *Campbell v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 646-51 (4th Cir. 2018) (affirming dismissal of Telephone Consumer Protection Act claim for lack of subject matter jurisdiction on the basis of derivative immunity), and the federal contractor defense. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333-34 (11th Cir. 2003) (extending *Boyle* to service contracts); *Carley v. Wheeled Coach*, 991 F.2d 1117, 1119-23 (3d Cir. 1993) (extending *Boyle* to civilian contractors). The colorable federal "defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Magnin* 91 F.3d at 1427; *See also Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (same); *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) (same). "The law does not require that the removing defendant virtually win his case before it can be removed." *Caver*, 845 F.3d at 1145. PHEAA therefore presents a colorable defense sufficient for removal. *See, e.g., Cobb*, 2016 U.S. Dist. LEXIS 168928, at *6-10 (finding federal student loan servicer's federal contractor defense colorable).

23.    PHEAA satisfies each requirement for federal officer removal under 28 U.S.C. § 1442(a)(1).

### B.    Federal Question Jurisdiction

24.    A federal question provides the second independent basis for jurisdiction over Plaintiffs' claims.  Under 28 U.S.C. § 1331, federal district courts possess original jurisdiction over "civil actions arising under the . . . laws . . . of the United States."  While Plaintiffs' claims do not rest on federal causes of action, their Complaint nonetheless falls into the category of cases over which the federal courts have jurisdiction.

25.    The Supreme Court has established a four-part test for federal jurisdiction over state-law claims.  *See, e.g., Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Under this test, a district court possesses federal jurisdiction over a state-law claim when a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id.*  Plaintiffs' claims satisfy this test.

26.    Plaintiffs' claims meet the first two prongs because the substance of their Complaint rests on the premise, clearly stated in the first sentence of their Complaint, that "Defendant failed to properly perform their duties as servicer for the Public Service Loan Forgiveness Program[.]"  Compl. at ¶ 1.  The trope that PHEAA failed to follow federal laws or regulations repeats throughout the Complaint.  *Id.* at ¶¶ 64, 74, 92, 104, 108, 120, 124, 135, 141-43, 149-51, 157-161.  As a result,

vindication of the claims—as framed by Plaintiffs—will necessarily require the parties to litigate, and the Court to interpret, the requirements of the PSLF Program under federal law and regulations. *See* 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219; *see also Davis v. GMAC Mortg. LLC*, No. 4:11-cv-95, 2012 U.S. Dist. LEXIS 33351, at *11 (M.D. Ga. Mar. 13, 2012) (finding a federal issue was raised by a breach of contract claim where "[t]he source of the contractual obligation that was allegedly breached is the federal regulation applicable to refinance loans guaranteed by the VA").

27. Plaintiffs' claims also satisfy the substantiality prong. The Court's inquiry into this prong focuses on "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. By this measure, Plaintiff's' claims arise under federal law. Interpretation of the laws and regulations governing the PSLF Program implicates significant federal interests. As an initial matter, federal student loans comprise the federal government's largest financial asset. *See* https://www.investopedia.com/articles/personal-finance/081216/who-actually-owns-student-loan-debt.asp (last visited May 14, 2019). As such, the federal government has a strong interest in the way these loans, and attendant forgiveness programs, are administered. The Department of Education has argued for federal preemption in this area. *See generally* Federal Preemption and State Regulation of

the Department of Education's Federal Student Loan Programs and Federal Student

Loan Servicers, 83 Fed. Reg. 10619 (Mar. 12, 2018).  Given these interests, the

federal questions raised by Plaintiffs' claims are undoubtedly substantial.  *Accord*

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314–16 (2005)

(national interest in resolution of federal tax issue in federal court rendered issue

"substantial"); *Davis*, 2012 U.S. Dist. LEXIS 33351, at \*16 (finding substantial

federal issues were raised where the "applicable regulation [was] an integral part of

the federal regulatory scheme for VA guaranteed loans").

    28.    Finally, the fourth prong—concerning federal-state balance—leans

heavily towards federal question jurisdiction.  The implementation of a federal loan

forgiveness program is not an area over which states exercise "a special

responsibility."  *Gunn*, 568 U.S. at 264 (quoting *Ohralik v. Ohio State Bar Ass'n*,

436 U.S. 447, 460 (1978)).  In fact, courts regularly exercise federal jurisdiction over

state-law claims that "involve[] a federal contractor's implementation of a federal

program."  *One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, 716 F.3d 218,

224-26 (1st Cir. 2013) (exercising federal jurisdiction over breach-of-contract action

that required interpretation of Section 8 and HUD's implementing guidance);

*Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466-

69 (7th Cir. 2015) (same).    And, as discussed above, the federal interest is particularly pronounced in this case.

29.    Plaintiffs' claims require the Court and the Parties to address the meaning of federal law and regulations.    Any interpretation of these provisions affects the interests of the federal government itself and the interests thousands of federal student loan borrowers.    As such, the Court possesses original jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331.

### C.    Diversity Jurisdiction

30.    This Court also has jurisdiction under 28 U.S.C. § 1332(a)(2), which provides district courts with original jurisdiction over civil actions where "the matter in controversy exceeds the sum or value of $75,000 exclusive of interests and costs, and is between – citizens of different states." 28 U.S.C. § 1332(a)(2).    Here, diversity exists and the amount in controversy for each named plaintiff exceeds the $75,000 statutory minimum.

31.    Removal under 28 U.S.C. § 1441 is appropriate because original jurisdiction is proper under 28 U.S.C. § 1332(a)(2), and because PHEAA is not a citizen of the forum state, Georgia.

32.   For purposes of diversity, a person's domicile establishes their citizenship.  *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction.").

33.   Plaintiffs allege that they are residents of the state of Georgia.  Compl. at ¶¶ 2-3.  Plaintiffs have brought this case as a class action on behalf of four putative classes, all made up of subsets of "Georgia residents with federal student loans serviced by PHEAA."  *Id.* at ¶ 80.

34.   As residents of Georgia, Plaintiffs and all members of the putative classes are citizens of Georgia.  *See Porter v. Ocwen Loan Servicing, LLC*, No. 1:18-cv-01253, 2018 U.S. Dist. LEXIS 222022, at *6 (N.D. Ga. Oct. 16, 2018) ("Plaintiff is a citizen of Georgia for purposes of establishing diversity because he admits in his Complaint that he is a resident of Georgia.")

35.   28 U.S.C. § 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

36.   PHEAA is a public corporation, 24 P.S. § 5101, with a principal place of business in Pennsylvania.  Though PHEAA has previously contended that it is a state agency, that argument has been rejected by other courts.  *See Pa. Higher Educ. Asst. Agency v. NC Owners*, 256 F. Supp. 3d 550 (M.D. Pa. 2017); *United States ex*

*rel. Oberg v. Pa. Higher Educ. Asst. Agency*, 804 F.3d 646, 675–77 (4th Cir. 2015);
*Lang v. Pa. Higher Educ. Asst. Agency*, 201 F. Supp. 3d 613, 625–28 (M.D. Pa.
2016); *Pele v. Pa. Higher Educ. Asst. Agency*, 13 F. Supp. 3d 518 (E.D. Va. 2014),
*aff'd*, 628 F. App'x 870, 872 (4th Cir. 2015); *Commw. v. Pa. Higher Educ. Asst.
Agency*, No. 1784-cv-02682, 2018 Mass. Super. LEXIS 14, at *3–20 (Mass. Sup.
Ct. Feb. 28, 2018).  The foregoing decisions hold that PHEAA is not a state agency.
Accordingly, PHEAA is deemed to be a citizen of Pennsylvania and complete
diversity exists between it and Plaintiffs, including the putative classes.

37.    Under 28 U.S.C. § 1332(a), the amount in controversy must exceed
$75,000 and the removing party bears the burden or showing that the amount in
controversy requirement has been met.  *Flowers v. Cypress Ins. Co.*, No. 3:14-cv-
126-TCB, 2014 U.S. Dist. LEXIS 193758, at *3 (N.D. Ga. Oct. 7, 2014) (citing
*Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).  Despite that
burden, "a removing defendant is not required to prove the amount in controversy
beyond all doubt or to banish all uncertainty about it."  *Pretka v. Kolter City Plaza
II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

38.    If, as here, a plaintiff has not pled a specific amount of damages,
removal is proper where "it is facially apparent from the complaint that the amount
in controversy exceeds the jurisdictional requirement."  *Williams*, 269 F.3d at 1319.

If the amount in controversy is not facially apparent from the complaint, "the court should look to the notice of removal[.]" *Id.*

39.     Additionally, "the Court has discretion to rely on the allegations on the face of the complaint and to 'make reasonable deductions, reasonable inferences, or other reasonable extrapolations' in determining whether a complaint meets federal jurisdictional requirements." *Flowers*, 2014 U.S. Dist. LEXIS 193758, at *5 (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010)).

40.     Here, the amount in controversy for each plaintiff plainly exceeds the $75,000 statutory minimum.  Both plaintiffs allege they took out multiple Direct Loans to fund their undergraduate and law school educations.  As of 2017, the average law student graduated with $139,000 in student loan debt.  *See* https://www.earnest.com/blog/which-graduate-degree-gets-you-out-of-debt-the-fastest/ (last visited May 14, 2019).  This amount alone is enough for each Plaintiff to meet the statutory minimum.

41.     Moreover, Plaintiffs seek attorneys' fees.  Compl. at ¶ 174.  Courts consider attorneys' fees in determining the amount in controversy.  *See, e.g., Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (claim for attorneys' fees should be taken into account in determining amount in controversy).

42.     Because Plaintiffs, including the putative classes, are completely diverse in citizenship from PHEAA and the amount in controversy exceeds $75,000, this Court has jurisdiction under 28 U.S.C. § 1332, and removal jurisdiction under 28 U.S.C. § 1441.

**D.      Diversity Jurisdiction Under the Class Action Fairness Act**

43.     Finally, this Court has jurisdiction under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), which provides district courts original jurisdiction over civil actions where the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which [. . .] any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

44.     As argued, *supra*, ¶¶ 32-36, complete diversity exists between Plaintiffs, including the putative classes, and PHEAA.

45.     CAFA's $5 million threshold amount in controversy is similarly satisfied. "District courts may make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable.'" *Meeks v. Am. Express Centurion Bank, Inc.*, No. 1:10-cv-3336, 2011 U.S. Dist. LEXIS 163371 (N.D. Ga. Apr. 6, 2011) (denying motion to remand a class action suit over which the federal district court

had diversity jurisdiction under CAFA) (quoting *Roe*, 613 F.3d at 1061).  The amount in controversy logically exceeds the $5 million statutory minimum. Plaintiffs are bringing claims on behalf of four classes made up of certain sets of all "Georgia residents with federal student loans serviced by PHEAA."  Compl. at ¶ 80. PHEAA services loans for thousands of borrowers in the State of Georgia with multi millions of dollars in aggregate student loan debt.

46.    As discussed *supra* at ¶ 41, Plaintiffs also seek attorneys' fees and, given the likely size of the putative classes of Georgia borrowers, the attorneys' fees will be substantial.  *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) ("Plaintiff also seeks attorneys' fees, which can exceed six figures in a class action and are properly aggregated and considered for purposes of determining the amount in controversy under [CAFA].").

47.    Because Plaintiffs, including the putative classes, are completely diverse in citizenship from PHEAA and the amount in controversy exceeds $5 million, this Court has jurisdiction under 28 U.S.C. § 1332(d), and removal jurisdiction under 28 U.S.C. § 1441.

## III.    **VENUE**

48.    Under 28 U.S.C. §§ 1441(a) and 1446(a), the United States District Court for the Northern District of Georgia is the proper venue for removal

jurisdiction because it embraces the place where this action presently is pending, the State Court of Fulton County in the State of Georgia.

## IV.    **ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

49.    PHEAA was served on April 25, 2019.  Accordingly, this Notice is timely because it has been filed within the thirty day period prescribed by 28 U.S.C. § 1446(b).

50.    PHEAA has not answered, moved, or otherwise responded to the Complaint.

51.    The documents attached hereto as Exhibit A constitute all of the process, pleadings, and orders received by PHEAA to date.

52.    Written notice of the filing of this notice of removal is being forwarded to Plaintiffs, as well as to the Clerk of Court for the State Court of Fulton County , pursuant to 28 U.S.C. § 1446(d).  A true and correct copy of the Notice of Filing of Notice of Removal (without exhibits) is attached hereto as Exhibit C.

53.    By filing this notice of removal, PHEAA does not waive any defense that may be available to it, including, but not limited to, the right to contest *in personam* jurisdiction, incomplete process, improper service of process, and/or improper venue, in this Court or in the court from which this action has been removed.

WHEREFORE, because this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1442, and because this matter may be removed under 28 U.S.C. § 1441, Defendant Pennsylvania Higher Education Assistance Agency hereby gives notice that the above-captioned action is removed to the United States District Court for the Northern District of Georgia.

DATED:  May 24, 2019                        Respectfully submitted,

*/s/ Sarah T. Reise*

Sarah T. Reise (GA Bar # 181567)
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

John C. Grugan
Aliza R. Karetnick
Elizabeth P. Weissert
*pro hac vices forthcoming*

BALLARD SPAHR LLP
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant, Pennsylvania*
*Higher Education Assistance Agency*

## <u>CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B</u>

I hereby certify that the foregoing has been computer processed with 14 point

Times New Roman font in compliance with the United States District Court for the

Northern District of Georgia Local Rule 5.1B.

DATED:  May 24, 2019                                          Respectfully submitted,

*/s/ Sarah T. Reise*

Sarah T. Reise (GA Bar # 181567)
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

John C. Grugan
Aliza R. Karetnick
Elizabeth P. Weissert
*pro hac vices forthcoming*

BALLARD SPAHR LLP
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant, Pennsylvania*
*Higher Education Assistance Agency*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2019, a copy of the foregoing NOTICE OF REMOVAL was filed electronically, and is available for viewing and downloading through the Court's CM/ECF System.  The foregoing NOTICE OF REMOVAL was also served by pre-paid certified mail to:

Christopher N. Armor
Armor Law, LLC
P.O. Box 451328
Atlanta, Georgia 31145

James W. Hurt, Jr.
Hurt Stolz, P.C.
1551 Jennings Mill Road
Suite 3100-B
Watkinsville, Georgia 30677

DATED:  May 24, 2019                          Respectfully submitted,

*/s/ Sarah T. Reise*

Sarah T. Reise (GA Bar # 181567)
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

*Attorney for Defendant, Pennsylvania Higher Education Assistance Agency*