UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMANDA LOVE and WINGO
SMITH, individually and on behalf of
all others similarly situated,

        Plaintiffs,

    v.

PENNSYLVANIA HIGHER
EDUCATION ASSISTANCE
AGENCY d/b/a FEDLOANS
SERVICING, INC.,

        Defendant.

CIVIL ACTION NO.
1:19-cv-02387-JPB

## ORDER GRANTING MOTION TO DISMISS

Before the Court is Defendant Pennsylvania Higher Education Assistance

Agency's ("PHEAA") Motion to Dismiss Plaintiffs' Complaint ("Motion").  ECF

No. 3.  Having reviewed and fully considered the papers filed therewith, the Court

finds as follows:

## I.    BACKGROUND[1]

Plaintiffs Amanda Love ("Love") and Wingo Smith's ("Smith")

(collectively "Plaintiffs") complaint against PHEAA alleges claims for negligence

---

[1] The facts set forth herein are as alleged in the Complaint and do not represent the
Court's determination of any issue.

(Counts I through III), breach of contract (Counts IV through VI), libel (Count VII) and promissory estoppel (Count VIII).

The dispute concerns the federal government's Public Service Loan Forgiveness program (the "PSLF Program"), which is designed to provide debt relief to students who accept traditionally lower paying public sector employment.

The PSLF Program forgives the federal student loans of borrowers who (i) took a Direct Loan or consolidated their loans into a Direct Loan; (ii) worked full-time in a qualifying public service role for ten years; and (iii) made 120 monthly loan payments under a qualifying repayment plan. Months during which a borrower's loan is in forbearance do not qualify toward the required payments, and only payments made after October 1, 2007 qualify.

Borrowers may submit an Employment Certification Form ("ECF") prior to fulfilling the requirements of the program to confirm employment eligibility, and many rely on periodic statements to track their progress towards completion.

In 2009, the United States Department of Education ("DOE") awarded PHEAA a contract to service student loans. This was followed by a 2012 exclusive contract to manage the PSLF Program (the "PSLF Program Contract" or "Contract"). Therefore, Borrowers seeking to participate in the PSLF Program must work with PHEAA.

As of June 30, 2018, the DOE reported that approximately 28,000 borrowers had submitted applications for loan forgiveness, but only 96 were approved.

*Plaintiff Love*

Love was employed by the Louisiana District Attorneys Association ("LDAA") from February 2009 through June 2010, and she has been employed with other approved employers since July 2010.

PHEAA began servicing Love's student loans in 2012. She submitted an ECF to PHEAA in June 2012 regarding her employment with LDAA, and at that time, PHEAA confirmed that LDAA was a qualifying employer for the purposes of the PSLF Program. PHEAA again confirmed in December 2015 that Love had been on a qualifying repayment schedule from May 2009 through December 2015.

However, in June 2018, PHEAA informed Love that it had determined that LDAA was not a qualifying employer under the PSLF Program.

Love further claims that PHEAA failed to properly credit multiple payments she made on her loans before June 2012. She also states she did not receive credit for a pre-payment she made in November 2012 for an installment payment that was due in January 2013. PHEAA stated that the payment was not made within the appropriate billing period.

The periodic account statements PHEAA provided to Love reflected the incorrect number of qualifying loan payments, and PHEAA failed to update her account to award proper credit, despite Love's many disputes.

Love asserts that she relied on PHEAA's communications in making "almost all economic decisions about her career in public service."

*Plaintiff Smith*

Smith worked for the Georgia Legal Services Program from July 2008 through May 2015 and has worked for the Atlanta Legal Aid Society from June 2015 until the present. However, as of December 2018, PHEAA had given him credit for only 11 qualifying payments under the PSLF Program.

Additionally, Smith claims that although he has never been delinquent on his student loan payments, PHEAA reported to the National Student Loan Data System that his loan was delinquent, prompting his law school to contact him by email. Smith was "shocked and embarrassed" by the email.

*Proposed Classes*

Plaintiffs seek to represent four classes of litigants:

- The Georgia ECF Class—residents who had their ECF approvals withdrawn;

- The Georgia Audit Class—residents who did not receive credit for loan payments made to other servicers before their accounts were transferred to PHEAA;

- The Georgia Prepayment Class—residents who did not receive credit for loan prepayments; and

- The Georgia Libel Class—residents who had their payment history incorrectly reported to a third party.[2]

PHEAA moves to dismiss the Complaint on several grounds.  It asserts that: (i) Plaintiffs lack standing because they have not alleged an injury-in-fact and their claims are not ripe; (ii) the Higher Education Act ("HEA"), pursuant to which Congress created the regime for federal student loans, preempts Plaintiffs' state law claims; (iii) PHEAA has derivative immunity as a federal contractor; and (iv) Plaintiffs fail to state a claim.

## II.    DISCUSSION

### A.    Standard of Review

#### 1.    Subject Matter Jurisdiction

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint."  *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501

---

[2] The alleged claims of the ECF, Audit and Prepayment Classes, which relate to PHEAA's management of the PSLF Program and are set forth in Counts I through VI and VIII of the Complaint, are hereinafter referred to as the "PSLF Program Claims."  The alleged claim of the Libel Class, which relates to statements PHEAA published while servicing loans and is set forth in Count VII of the Complaint, is hereinafter referred to as the "Libel Claim."

F.3d 1244, 1251 (11th Cir. 2007).  If the challenge is facial, the court must

consider the allegations of the complaint to be true for the purposes of ruling on the

motion—similar to the standard for evaluating a motion to dismiss under Rule

12(b)(6).  *Id.*  The court must also view the allegations in the light most favorable

to the non-moving party.  *See Kinnett v. Strayer Educ., Inc.*, 501 F. App'x 890, 892

(11th Cir. 2012) ("At the motion to dismiss stage, [the court] accept[s] all well-

pleaded facts as true, and construe[s] the reasonable inferences therefrom in the

light most favorable to the plaintiff.") (citing *Garfield v. NDC Health Corp.*, 466

F.3d 1255, 1261 (11th Cir. 2006)).

　　If, on the other hand, the challenge is factual, the court considers matters

outside the pleadings such as testimony and affidavits.  *Id.*  In sum, "[t]he district

court has the power to dismiss for lack of subject matter jurisdiction on any of

three separate bases:  (1) the complaint alone; (2) the complaint supplemented by

undisputed facts evidenced in the record; or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts."  *Id.* (quoting

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

## 2.    Failure to State a Claim

　　In evaluating a motion to dismiss under Rule 12(b)(6), the court "accept[s]

the allegations in the complaint as true and constru[es] them in the light most

favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988,

989 (11th Cir. 2012). "[A] plaintiff's obligation to provide the grounds of his

entitlement to relief[, however,] requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). *See*

*also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if

it tenders naked assertions devoid of further factual enhancement.") (quoting

*Twombly*, 550 U.S. at 557) (internal punctuation omitted); *Dusek v. JPMorgan*

*Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6)

motion to dismiss, … legal conclusions without adequate factual support are

entitled to no assumption of truth.") (internal punctuation and citations omitted).

Moreover, "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 557. "This standard does not

require a party to plead facts with such particularity to establish a significant

probability that the facts are true, rather, it requires a party's pleading of facts to

give rise to a 'reasonable expectation that discovery will reveal evidence

[supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185,

2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at

555). *See also Twombly*, 550 U.S. at 570 (dismissing the complaint because the

plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

      **B.**     <u>**Analysis**</u>

          **1.**    **Standing**

              **a.  Injury-in-Fact**

PHEAA contends that Plaintiffs lack standing because they have not suffered an injury-in-fact where the crux of their claimed injury is that the DOE may deny their applications for loan forgiveness in the future due to PHEAA's alleged failure to tally their loan payments correctly. PHEAA argues that because these alleged injuries are contingent on Plaintiffs' successful completion of 120 qualifying loan payments and ten years of employment with a qualifying employer, they are not real and immediate and are instead speculative.

Plaintiffs respond that PHEAA ignores their anxiety and frustration and time spent filing disputes and point to their sacrifice in foregoing private employment

and its accompanying benefits in order to serve the public.  They further assert that there is a "substantial risk" that PHEAA will fail to account for all of their qualifying payments and employment, and they will not receive their "bargained-for loan forgiveness."  They also highlight the thousands of borrowers who have been denied loan forgiveness as evidence that the harm has already occurred and will persist if PHEAA is not held accountable.

Additionally, Plaintiffs argue that the injury from PHEAA's false reporting regarding Smith's loan has already occurred.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and [(]3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). These requirements ensure federal courts adjudicate only actual "cases" and "controversies."  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019).

The Eleventh Circuit has explained the injury-in-fact requirement as follows:

[T]he Supreme Court has repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that

allegations of possible future injury are not sufficient.  And it has been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.  A prospective injury that is contingent on the choices of a third party is less likely to establish standing.

*Id*. (internal punctation and citations omitted).  *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (stating that "imminence is concededly a somewhat elastic concept," but it can be understood as a requirement that "the injury is certainly impending"); *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1202 (11th Cir. 2018) (stating that the injury required for standing must be "real, immediate, and direct" even though it need not be actualized) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

In *Clapper*, the Supreme Court found that the "attenuated chain of inferences necessary to find harm" to plaintiffs did not satisfy standing requirements, where the claimed injury from a government surveillance statute was contingent on decisions by the government to:  (i) target parties with whom the plaintiffs might communicate; (ii) monitor those parties pursuant to the surveillance statute versus through another method; (iii) obtain an order from a judge to conduct such surveillance; and (iv) succeed in intercepting the communications.  *Id.* at 410.  The Court stated that the plaintiffs could not "rely on speculation about the unfettered choices made by independent actors not before the

court" and concluded that the "speculative chain of possibilities [did] not establish that injury based on potential future surveillance [was] certainly impending."[3]  *Id.* (internal punctuation omitted).  *See also Educ. Corp. of Am. v. United States Dep't of Educ.*, No. 2:18-cv-01698, 2018 WL 5786077, at *5 (N.D. Ala. Nov. 5, 2018) (finding that in the absence of an allegation that the defendant had threatened to penalize the plaintiff, and the defendant had a history of imposing such penalty, the mere "possibility" of a penalty did not satisfy Article III's case or controversy requirement); *Sammons v. Nat'l Comm'n on Certification of Physician Assistants, Inc.*, 104 F. Supp. 2d 1379, 1381 (N.D. Ga. 2000) (finding that the plaintiff lacked standing to assert a claim that she was not allowed to test for a physician assistant's certificate where she never applied to take the exam and alleged only that she had been "advised" that she could not take it).

On facts almost identical to the circumstances of this case, a district court found that the plaintiffs' did not state an injury-in-fact because:  (i) even though they claimed that PHEAA's alleged failures to report loan payments correctly prevented them from making career decisions, they did not allege that they had

---

[3] The Court noted that it had previously found standing in some cases based on a "substantial risk" that the harm will occur, but the plaintiffs likewise did not satisfy that standard to the extent it was even different from the "clearly impending" requirement.

applied for private employment or rejected any employment offers; and (ii) their fear that their applications for loan forgiveness under the PSLF Program would be rejected was "purely hypothetical," "wholly speculative" and "far too remote to confer standing" because there was no assurance that they would ultimately qualify for the program, which required making all their loan payments and continuing to work for qualified employers in the upcoming years. *See Winebarger v. Pa. Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1087 (C.D. Cal. 2019). The court also pointed out that PHEAA could correct the allegedly wrong tallies in the plaintiffs' accounts prior to their completion of the program, in which case the plaintiffs' application would proceed as planned.

In this case, at the core of Plaintiffs' PSLF Program Claims is the fear that they would have made 120 qualifying payments and would have worked for a qualified employer for 10 years and therefore should be eligible to submit an application to the DOE for loan forgiveness, but they will be unable to do so or their application will ultimately be denied because PHEAA would have failed to calculate their qualifying payments correctly. However, this "speculative chain of possibilities" requires both assumptions that Plaintiffs will fulfill all of the PSLF program requirements and guesswork regarding the DOE's future decision on

12

specific plaintiffs' applications.  *See Clapper*, 568 U.S. at 409.  This is the type of

hypothetical injury that courts have found to be insufficient to confer standing.  *Id.*

Indeed, Plaintiffs have ***not*** applied for loan forgiveness nor have they

alleged that they are currently eligible to do so.  The Complaint also does not

allege the reason for the high rate of application denials to date.  To conclude that

those denials portend that Plaintiffs' applications will likewise be denied is to

engage in speculation.

Additionally, Love has not specified what actions she took in reliance on

PHEAA's prior approval of her ECF form or connected such action to her claim of

detriment.  Thus, there are no facts upon which the Court can evaluate whether she

has pleaded an injury that is concrete or particularized.[4]

In sum, taking the allegations in the Complaint as true and viewing them in

the light most favorable to Plaintiffs, the Court concludes that the feared denials of

Plaintiffs' not yet filed applications depend on future contingencies that may or

may not occur and therefore are not "certainly impending."  They are based on

---

[4] This is also a pleading sufficiency defect under *Twombly*, which the Court
addresses in Section II(B)(2)(d), *infra*.

conjecture.[5]  Accordingly, Plaintiffs do not have standing to bring their PSLF

Program Claims.[6]

### b. Ripeness

"In deciding whether a claim is ripe for adjudication or review, [the court]

look[s] primarily at two considerations:  (1) the fitness of the issues for judicial

decision, and (2) the hardship to the parties of withholding court consideration."

*Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995).  "The purpose of the

ripeness doctrine is 'to prevent the courts, through avoidance of premature

adjudication, from entangling themselves in abstract disagreements.'"  *Id.*  As

such, the Eleventh Circuit has made clear that district courts "may not pass upon

hypothetical matters" and that where the claim involves a contingency, and

"[w]hether [the] contingency will occur is a matter of speculation," the claim is not

ripe for adjudication.  *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999).

Here, the Court's above analysis regarding Plaintiffs' alleged injury-in-fact

applies to the consideration of whether these issues are fit for adjudication at this

---

[5] To the extent Plaintiffs argue that the "substantial risk" standard applies, they have not shown that that standard is different from the "clearly impending" requirement.  In any event, the Court finds that the claimed injury is too speculative and remote to demonstrate even a "substantial risk" of harm.
[6] The Court, however, finds that Plaintiffs have standing to bring the Libel Claim because the statement regarding Smith has already been published and therefore the alleged injury is "concrete and particularized" and not hypothetical.

time, and the conclusion is the same—Plaintiffs' PSLF Program Claims are hypothetical and involve contingencies that require speculation. Thus, they are premature, and the Court cannot rule on them at this time.

As to the second prong of the test, the Eleventh Circuit has found "substantial hardship," where, for example, "[p]otential litigants … are forced to choose between foregoing lawful activity and risking substantial legal sanctions." *Cheffer*, 55 F.3d at 1524. While the Court acknowledges the frustration that Plaintiffs have experienced with the alleged failures of PHEAA to administer the PSLF Program properly, the Court cannot conclude that those frustrations are comparable to the claims set forth in cases like *Cheffer*. Plaintiffs have not cited any authority that would support a finding that adjudication of their claims is necessary to prevent "substantial hardship." The Court therefore finds that Plaintiffs lack standing to bring their PSLF Program Claims additionally because their claims are not ripe.

But even if Plaintiffs had standing to bring these claims, their Complaint would nevertheless be dismissed because, as set forth below, they have failed to state claims upon which relief can be granted.

### 2. State Law Claims[7]

### a. Negligence (Counts I-III)

PHEAA argues that Plaintiffs' negligence claims fail because it does not owe Plaintiffs a duty of care, and Plaintiffs have not identified any basis for imposing such a duty on PHEAA.

Plaintiffs respond that PHEAA owed a duty to use reasonable care in administering the PSLF Program, which "arose not only as a result of the common law and the statutes, but also because [PHEAA] was bound by, and had committed to comply with, industry standards, as represented by the [DOE] to borrowers, as well as in the [DOE]'s contract for services with [PHEAA]." They also allege that PHEAA had a general common law duty to prevent the foreseeable risk of harm to others.

Further, Plaintiffs assert that, as the sole administrator of the PSLF Program, PHEAA owes a fiduciary duty to Plaintiffs based on "a combination of statutory

---

[7] PHEAA argues that Plaintiffs' state law claims are preempted by the HEA. The Court need not reach the preemption issue because Plaintiffs' state law claims fail as a matter of law. *See, e.g., Metoyer v. Chassman*, 248 F. App'x 832, 835 (9th Cir. 2007) ("We need not reach the question of preemption because we conclude that [the plaintiff's state law] claim fails on the merits."); *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 809 (7th Cir. 2009) (same).

interpretation [of the Consumer Financial Protection Act] and contractual estoppel."

Georgia law is, however, clear that a loan servicer does not owe a duty to borrowers. In a case regarding a bank's administration of a loan, the Georgia Court of Appeals explained that "[w]hile evidence existed that the bank may have been negligent in managing and monitoring the loan, any duty the bank owed [the plaintiff] in connection with the loan arose solely out of the parties' contractual relationship" and was not based on a theory of negligence. *Fielbon Dev. Co., LLC v. Colony Bank of Houston Cty.*, 660 S.E.2d 801, 808–09 (Ga. Ct. App. 2008). *See also Bennett v. Ocwen Loan Servicing, LLC*, No. 2:13-cv-00243, 2014 WL 12860644, at *6 (N.D. Ga. May 13, 2014) (stating that "it is well established that there is no independent duty to non-negligently service a loan"); *Smith-Tyler v. Bank of Am., N.A.*, 992 F. Supp. 2d 1277, 1284 (N.D. Ga. 2014) (same).

Based on the reasoning of these cases, and because Plaintiffs rely on duties arising under the PSLF Program Contract and have not articulated a specific duty that would apply here, the Court finds that PHEAA owes no legal duty to Plaintiffs with respect to the administration of the PSLF Program.

If PHEAA owes no legal duty to Plaintiffs, then it follows that it does not owe a heightened or fiduciary duty to them. *See Bernstein v. Wells Fargo & Co.*,

17

No. 1:18-cv-02887, 2018 WL 7018007, at *8 (N.D. Ga. Nov. 28, 2018) (stating that a loan servicer owes neither an ordinary nor a fiduciary duty to borrowers). The law requires Plaintiffs to establish the existence of a confidential relationship (*see Monroe v. Bd. of Regents of Univ. Sys. Of Ga.*, 602 S.E.2d 219, 222 (Ga. Ct. App. 2004)), yet they have pointed only to the Consumer Financial Protection Act without explaining why it would be relevant here. The Court does not see the connection.

In sum, Plaintiffs have not pointed to any specific authority that would support their argument that PHEAA owed them a legal duty, much less a fiduciary duty. Without such authority, their negligence claim fails. *See Bernstein*, 2018 WL 7018007, at *8 (granting a motion to dismiss because the "[p]laintiff's state law claims for negligence and breach of an unidentified duty are without any factual and/or legal support").

### b. Breach of Contract (Counts IV-VI)

PHEAA argues that because Plaintiffs are not parties to or the intended third-party beneficiaries of the PSLF Program Contract, they do not have standing to bring a claim for breach of that contract.

18

Plaintiffs contend that they *are* the intended beneficiaries of the Contract because its purpose is to facilitate the participation of students like them in the PSLF Program.

Under Georgia law, "[i]n order for a third party to have standing to enforce a contract[,] it must clearly appear from the contract that it was intended for his or her benefit." *Donnalley v. Sterling*, 618 S.E.2d 639, 641 (Ga. Ct. App. 2005) (internal punctuation omitted).  In other words, "[u]nless such an intention is shown on the face of the contract, [a] defendant is under no duty to the third party and consequently [a] plaintiff acquires no right as the third-party beneficiary." *Monroe*, 602 S.E.2d at 225 (citing *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 573 S.E.2d 31 (Ga. 2002)).  "The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." *Donnalley*, 618 S.E.2d at 641.

In *Miree v. United States*, which concerned a contract between a county and the Federal Aviation Administration requiring the county "to operate and maintain [its airport] in a safe and serviceable" manner and explicitly stating that the county would "operate the Airport … *for the use and benefit of the public*," the Georgia Supreme Court explained that "[p]ractically[] every contract entered into by a [government] is for some public benefit because the only business of the county is

19

public business." 249 S.E.2d 573, 575, 579-80 (Ga. 1978). Thus, "[t]he mere fact that a member of the public would have benefited from the performance [of the contract] does not create third party intended beneficiary status under Georgia law." *Id*. at 580. The court further stated that it would be "too broad [an interpretation] to permit a contention that every injured party was an intended beneficiary under the public contract," particularly where "[t]here is no intention manifested in the contract that the county compensate any member of the public for injurious consequences." *Id*. Accordingly, the court concluded that the plaintiffs were not third-party beneficiaries of the contract.

Relying on these principles, the Georgia Court of Appeals found that a homeowner who applied to modify his mortgage was not an intended third-party beneficiary of a contract implementing the federal Home Affordable Modification Program ("HAMP") and therefore could not sue the contracting bank for its alleged failure to evaluate his loan modification application properly. *U.S. Bank, N.A. v. Phillips*, 734 S.E.2d 799, 801-03 (Ga. Ct. App. 2012) (noting that "[i]t is generally recognized that 'government contracts that benefit members of the public are assumed to create incidental beneficiaries [and not intended beneficiaries] absent a clear intent to the contrary'"). The court also found that because HAMP gave the Secretary of the Treasury the right to initiate a cause of action for

violations of the Act, borrowers did not have a private right of action under it.  *Id.* at 802.

Here, it is clear that Plaintiffs' contention that they are intended third-party beneficiaries of the PSLF Program Contract simply because PHEAA's implementation of the Contract facilitates their participation in the program does not square with Georgia law.  Not only is a conclusory assertion that they are "intended third party beneficiaries" of the Contract—without any supporting facts—not sufficient to support their claim under *Twombly* (*see* 550 U.S. at 555), but Plaintiffs also do not become third-party beneficiaries simply because they are members of the public who stand to benefit from PHEAA's performance under the Contract (*see Miree*, 249 S.E.2d at 580).  And the Complaint's bare assertion does not confer such status.

Moreover, the HEA "expressly empowers only the Secretary of Education … with the authority to enforce the HEA and rectify HEA violations." *Bennett v. Premiere Credit of N. Am., LLC*, 504 F. App'x 872, 875 (11th Cir. 2013). Therefore, there is no private right of action under the HEA.  *Id.*  This is an additional factor that militates against finding that Plaintiffs are third-party beneficiaries under the Contract and can therefore sue to enforce it.

Accordingly, the Court finds that Plaintiffs' breach of contract claims fail.

### c.  Libel (Count VII)

Smith alleges that PHEAA reported his loans as delinquent even though his payments were timely.  He claims he was "shocked and embarrassed" when his law school contacted him regarding the issue.

PHEAA argues that even if it made the allegedly false statements, Smith's libel claim fails because the Complaint pleads neither libel *per se*—that the statement suggested that Smith is dishonest, immoral or guilty of crimes—nor special damages.

Plaintiffs respond that the statement regarding a delinquent debt is libel *per se* because it could cause Smith to get disbarred and could affect his networking opportunities.  They further argue that they were not required to plead special damages because Smith's claim constitutes libel *per se*.

Under Georgia law, a "mere statement that [a] person … owes a debt and refuses to pay it or owes [a] debt long past due, without imputation of his insolvency, is not 'libelous per se' and does not render [the] author or publisher of such statement liable for libel without proof of special damages."  *Mell v. Edge*, 22 S.E.2d 738, 738 (Ga. Ct. App. 1942).  Thus, "[t]o state a claim for libel under Georgia law, [a plaintiff] must plead a false statement that either: (1) is libel per se;

or (2) caused [him] to suffer special damages." *McGowan v. Homeward Residential, Inc.*, 500 F. App'x 882, 885 (11th Cir. 2012).

Here, the Court focuses only on whether Plaintiffs have pleaded libel *per se* since they concede, and the Complaint shows, that they did not plead special damages. As is clear in the court's decision in *Mell* (and even in *McGowan*, which Plaintiffs cite), a mere statement of a delinquent debt does not constitute libel *per se*. Accordingly, Plaintiffs have failed to state a claim for libel.

### d. Promissory Estoppel (Counts VIII)

Love alleges that she relied on PHEAA's pre-approval of her ECF form in making decisions about her "employment and economic future" and was harmed by such reliance. Smith does not identify any specific instances of reliance.

PHEAA counters that because the Complaint does not allege that Plaintiffs substantially changed their position in reliance on PHEAA's pre-approval, they have failed to state a promissory estoppel claim.

Plaintiffs did not respond to this argument in their opposition brief and have therefore conceded it. *See* N.D. Ga. Civ. R. 7.1(B) ("Failure to file a response shall indicate that there is no opposition to the motion."); *Tucker v. City of Florence*, 765 F. Supp. 2d 1320, 1332 (N.D. Ala. 2011) (finding certain counts of the complaint abandoned where the plaintiff "marshaled no argument whatsoever

to counter [the] defendants' assertion[s]") (citing *Norelus v. Dennys, Inc.*, 628 F.3d 1270, 1296–97 (11th Cir. 2010)).

In any event, PHEAA is correct that Plaintiffs must allege that they made a "substantial change of position to [their] detriment in reliance upon [PHEAA's] promise" in order to prevail on their claim for promissory estoppel. *Balmer v. Elan Corp.*, 583 S.E.2d 131, 133 (Ga. Ct. App. 2003). *See also Robinson v. SunTrust Mortg., Inc.*, 785 F. App'x 671, 678 (11th Cir. 2019) (stating that "[o]nly detrimental reliance which causes a substantial change in position will constitute sufficient consideration to support promissory estoppel" and affirming dismissal of the claim where the complaint failed to show how the plaintiff relied on the defendant's promises"); *Adams v. JPMorgan Chase Bank*, No. 1:10-cv-04226, 2011 WL 2532925, at *3 (N.D. Ga. June 24, 2011) (finding that the plaintiff failed to state a claim for promissory estoppel where the actions he took in reliance on the defendant's alleged promise—paying his mortgage—would have been required absent the promise and therefore were not to his detriment).

As is evident from these cases, Plaintiffs' conclusory allegations of detriment—without ***any*** showing of how they changed their position in response to

an alleged promise—is not sufficient to survive a motion to dismiss.[8]  Love, for example, has not explained how an ECF she submitted *after* she concluded her employment with LDAA influenced her decisions regarding employment. Accordingly, Plaintiffs have failed to state a claim for promissory estoppel.[9]

Based on the foregoing analysis, the Court **GRANTS** PHEAA's Motion (ECF No. 3) and dismisses this action.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 16th day of March, 2020.

_____
**J. P. BOULEE**
United States District Judge

---

[8] The Court need not take conclusory allegations or legal conclusions as true for the purposes of ruling on this Motion.  *See Dusek*, 832 F.3d at 1246.
[9] In light of the above rulings, which dispose of this case, the Court does not reach PHEAA's argument that it has derivative immunity from suit because it is a federal contractor.